UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CECIL HOLT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WALSH GROUP, et al., ) <br> ) <br> Defendants. ) <br> ) | Case No. 17-cv-1173 (GMH) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Third-Party Defendants' motion to dismiss Third-Party Plaintiff's claims for contractual and equitable indemnification and contribution on the grounds that they are barred by the District of Columbia's Workers' Compensation Act ("WCA"), D.C. Code § 32-1504. Upon consideration of the entire record,[1] and for the reasons set forth below, Third-Party Defendants' motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

On April 21, 2014, Plaintiff Cecil Holt ("Holt") was injured while working on a construction site at 402 Tingey Street SE, Washington, D.C. when he fell through a hole in the roof he alleges was improperly covered. Holt is an employee of Tradesmen International, LLC ("Tradesmen"), a corporation that provides temporary, unskilled labor to its clients. In April 2014, Tradesmen entered into a Client Services Agreement with Third-Party Defendant AES Clean Technology, Inc. ("AES"), in which Tradesmen agreed to assign Holt to AES on a permanent

---

[1] The docket entries relevant to this memorandum opinion are: (1) Walsh's Complaint [Dkt. 37]; (2) Parties' Subcontract Agreement [Dkt. 37-5]; (3) Tradesmen's Client Services Agreement [Dkt. 37-6]; (4) AES/UBS's Motion to Dismiss [Dkt. 52; Dkt. 52-1]; (5) Walsh's Opposition [Dkt. 55]; and (6) AES/UBS's Reply [Dkt. 60]. All citations to page numbers within a particular document will be to the ECF docket page numbers assigned to the document.

1

basis. AES, in turn, assigned Holt to work for Third-Party Defendant Unified Building Systems, Inc. ("UBS"), a division of AES. UBS, through AES, was a subcontractor of Third-Party Plaintiff Walsh Construction Company II, LLC ("Walsh"), the general contractor of the construction project at 402 Tingey Street SE. UBS and Walsh have a signed Subcontract Agreement ("Subcontract") dated August 15, 2012, that governed the nearly $3,000,000 of work UBS completed for Walsh on the project, namely, installing metal wall panels and louvers.

Holt originally filed his action in the D.C. Superior Court, naming Walsh (among others) as a Defendant, alleging that Walsh's negligent control of the construction premises and project contributed to his injury. The action was subsequently removed to this Court on diversity jurisdiction. Holt had also named AES as a Defendant in the original action, but that claim was dismissed with Plaintiff's consent. Minute Order on July 27, 2017 granting Dkt. 19. On January 31, 2018, Walsh filed a Third-Party Complaint against AES and UBS (among others), seeking, in the event Walsh is found liable to Holt, (1) contractual indemnification (Counts VII and X), (2) equitable indemnification (Counts VIII and XI), and (3) contribution (Counts IX and XII[2]) pursuant to the Subcontract, in which Walsh contends that UBS agreed to defend, indemnify, and hold harmless Walsh in and against all claims or actions arising out of work performed under the Subcontract. [Dkt. 37 at 13–17].

In the pending motion to dismiss, Third-Party Defendants AES and UBS ("AES/UBS") argue that Walsh's claims for indemnification and contribution are barred by the WCA, D.C. Code §§ 32-1501 *et seq.*, specifically, section 32-1504, which provides that an employee's exclusive

---

[2] Due to a typographical error, there are two Count IXs in the Third-Party Complaint. The first asserts a contribution claim against UBS. [Dkt. 37 at 15]. The second asserts a contribution claim against AES. *Id.* at 17. But for the typographical error, the second Count IX would be Count XII of the Complaint. Accordingly, the second Count IX will be referred to in this opinion as "Count XII."

remedy against an employer for accidental injuries on the job is through the WCA.[3] [Dkt. 52-1 at 9]. Walsh counters that its contractual indemnification claim falls within an exception to section 32-1504, which allows for express indemnification provisions. [Dkt. 55 at 7]. Walsh also contends that the Subcontract contains an express waiver of section 32-1504, which should operate to allow its indemnification and contribution claims to proceed. *Id.*

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint on the basis that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court reviewing a 12(b)(6) motion must accept as true the well-pleaded factual allegations contained in the complaint. *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). While the plaintiff need not make "detailed factual allegations" to avoid dismissal, he must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). To meet this standard, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.     DISCUSSION

The purpose of the WCA is to establish a quick and efficient system by which an employee may recover damages from his employer for accidental injuries "arising out of and in the course

---

[3] The parties do not dispute that the law of the District of Columbia is applicable to their action. *See* Dkt. 37; Dkt. 57. Indeed, the Subcontract directs that its terms be governed by District of Columbia law or the law of the state or territory in which the construction project is situated, here, the District of Columbia. [Dkt. 52, Ex. 2, ¶ 11.1].

of employment." D.C. Code § 32-1501(12); *see also Ferreira v. D.C. Dep't of Emp't Servs. (Workers' Comp.)*, 531 A.2d 651, 656 (D.C. 1987). If an employee is injured on the job and wants compensation from his employer, he must bring suit under the WCA in accordance with section 32-1504, an exclusivity provision that limits both the scope of an employer's liability and the compensation available to an employee. It states:

> The liability of an employer prescribed in [the section regarding coverage] shall be exclusive and in place of all liability of such employer to the employee, his legal representative, spouse or domestic partner, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law on account of such injury or death.
>
> The compensation to which an employee is entitled under this chapter shall constitute the employee's exclusive remedy against the employer, or any collective-bargaining agent of the employer's employees and any employee, officer, director, or agent of such employer, insurer, or collective-bargaining agent (while acting within the scope of his employment) for any illness, injury, or death arising out of and in the course of his employment.

D.C. Code § 32-1504(a)–(b). The WCA's exclusivity provision seeks to strike a balance between employee and employer: the employee gets "faster and virtually guaranteed compensation for accidental job-related injury," even where the employee was negligent, and the employer's assumption of a degree of no-fault liability relieves it "of its previously unlimited common law tort liability." *Myco, Inc. v. Super Concrete Co., Inc.*, 565 A.2d 293, 296 (D.C. 1989). Awards under the WCA "often fall far short of those potential [tort] awards," *id.*, due to compensation guidelines and a statutory maximum cap on the compensation amount, *see* D.C. Code §§ 32-1505 to 1511. Although an employer is protected from tort liability under the WCA, an employee is not precluded from suing a third party that he asserts is partially or wholly at fault for his injury. *Myco*, 565 A.2d at 296. However, a goal of the WCA's exclusivity provision is to limit an employer's financial liability when an employee is injured, and if a third party in turn seeks recovery from the employer, that claim "runs head-on" into the exclusivity provision. *Id.* at 297.

4

Before confronting the merits of AES/UBS's motion to dismiss, which seeks application of the WCA's bar to Walsh's claims, the Court must first address a threshold issue: whether AES/UBS are Holt's employer and, therefore, covered by the WCA. If AES/UBS are not Holt's employer, the WCA does not apply and it would not limit the types of claims Walsh may bring against AES/UBS. AES/UBS argue that they are Holt's employer under the "lent employee" doctrine and are thereby protected by the WCA's exclusivity provision. [Dkt. 52-1 at 4]. Walsh fails to contest AES/UBS's "lent employee" argument in its opposition. [Dkt. 55 at 5]. The argument is therefore conceded. *See Lockhart v. Coastal Int'l Sec.*, 905 F. Supp. 2d 105, 118 (D.D.C. 2012) ("[W]hen a [litigant] files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." (quoting *Fox v. Am. Airlines*, No. 02-cv-2069, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003))); *Toms v. Office of the Architect of the Capitol*, 650 F. Supp. 2d 11, 18–19 (D.D.C. 2009) (same).

Even had it not been conceded, the Court would find in favor of AES/UBS on this issue. The "lent employee" doctrine holds that when a "general employer" lends an employee to a "special employer," the "special employer" also becomes liable for workers' compensation if: "(a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work." *USA Waste of Maryland, Inc. v. Love*, 954 A.2d 1027, 1034 (D.C. 2008) (quoting *Whitehead v. Safway Steel Prods., Inc.*, 497 A.2d 803, 811 (Md. 1985)) (finding that a trash company was the special employer of a truck driver assigned by a staffing agency, and thus, was immune from tort liability to the driver). Here, there is a contract for hire between Tradesmen, the staffing agency that Holt worked for (Holt's "general employer"), and AES, in which Tradesmen agreed to "assign employees" to AES on a "permanent basis." [Dkt.

37-6 at 1]. Although there is no express contract between Holt and AES, in *Love* the court found that an employee's consent to the special employment relationship created an implied contract of hire. *See* 954 A.2d at 1034. A contract of hire can be implied here from Holt voluntarily showing up to work on behalf of AES and submitting to its direction and control. *Id.* Similarly, the second element is met by Holt performing construction work for Walsh that was "essentially that of" AES. *Id.* (quoting *Whitehead*, 497 A.2d at 811). Finally, the third element—that the special employer has the right to control the details of the work—is met by reviewing the language in Tradesmen's contract with AES: "[AES] is solely responsible for directing, supervising and controlling Tradesmen employees as well as their work . . ." [Dkt. 37-6 at 1].

As a "lent employee," Holt is thus barred by the WCA's exclusivity provision from bringing a tort action against AES/UBS. *See Love*, 954 A.2d at 1035. The question remains whether Walsh's indemnification and contribution claims are also barred by the WCA because they are based on allegations of fault and negligence on AES/UBS's part. Walsh contends that its claims survive application of the WCA because: (1) they fall into an exception to the WCA's exclusivity provision for express indemnification, and (2) AES/UBS have waived the WCA's exclusivity provision in its Subcontract with Walsh. [Dkt. 55 at 4]. Each of Walsh's arguments will be addressed in turn.

### A. Express Indemnification

Indemnification is a form of restitution that generally involves shifting the entire burden of liability from the indemnitee to the indemnitor. *See District of Columbia v. Wash. Hosp. Ctr.*, 722 A.2d 332, 339–40 (D.C. 1998). "A duty to indemnify may arise from an express contract provision or, in the absence of a contract, where indemnification is required to prevent injustice." *Quadrangle Dev. Corp. v. Otis Elevator Co.*, 748 A.2d 432, 435 (D.C. 2000) (citing *East Penn*

*Mfg. Co. v. Pineda*, 578 A.2d 1113, 1126–27 n. 20 (D.C.1990)). However, "[o]ne of the most common, and simple bases of indemnity is a contract that provides for it." *W.M. Schlosser Co. v. Md. Drywall Co.*, 673 A.2d 647, 653 (D.C. 1996) (quoting *Pineda*, 578 A.2d at 1126).

As the D.C. Court of Appeals observed in *Myco*, it is "well-settled in most jurisdictions" that an employer's agreement to indemnify a third party pursuant to an express contract is an exception to the exclusivity provision of a workers' compensation statute.[4] 565 A.2d at 297; *see also, e.g.*, *Manson-Osberg Co. v. State*, 552 P.2d 654, 659 (Alaska 1976) (finding that enforcement of an express indemnification contract did not violate workers' compensation exclusivity); *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52 (Del. 1970) (same); *Union P. R. Co. v. Kaiser Agricultural Chem. Co.*, 425 N.W.2d 872, 879 (Neb. 1988) (same); *Safeway, Inc. v. DPI Midatl., Inc.*, 619 S.E.2d 76, 77 (Va. 2005) (same). "This is because the duty involved is one voluntarily accepted by the employer and exist[s] separate and apart from either of the parties' relationship with the injured employee." *Myco*, 628 A.2d at 297. Express indemnification agreements, however, are "narrowly construed by the courts," *Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 635 (D.C. 1993), which lends a great deal of importance to the language of the contract.

The indemnification provision of UBS's Subcontract with Walsh[5] provides, in pertinent part:

> To the fullest extent permitted by law, Subcontractor [UBS] shall indemnify, defend (with counsel reasonably satisfactory to Contractor), and save harmless … Contractor [Walsh] … from and against any and all suits, actions, legal or

---

[4] *Myco* did not in fact involve an express indemnification contract. Nevertheless, this Court has cited this observation in *Myco* as illuminating District of Columbia law concerning the interplay between an express indemnification agreement and the WCA's exclusivity provision. *See, e.g.*, *Truesdale v. Mountain Productions, Inc.*, 292 F. Supp. 3d 195, 200 (D.D.C. 2017).

[5] Walsh hinges both of its contractual indemnification claims (Counts VII and X) on the Subcontract. [Dkt. 37 at 13, 15]. The only parties to the Subcontract are UBS and Walsh. [Dkt. 52-2]. Nonetheless, AES does not contest that it is bound by UBS' Subcontract with Walsh, *see* Dkt. 60 at 2 ("in the Subcontract Agreement with AES/UBS…"), apparently because of its corporate relationship to UBS. [Dkt. 52 at 1; Dkt. 52-1 at 1 (describing UBS as an "affiliate" or "division" of AES)].

> administrative proceedings, claims, debts, demands, damages, consequential damages, liabilities, judgments, fines, penalties, interest, actual attorney's fees, costs and expenses of whatever kind or nature (hereafter "Indemnified Claims") and whether they may arise before, during, or after performance of Subcontractor's Work which are in any manner directly or indirectly caused [or claimed to be caused], occasioned, or contributed to, in whole or in part, through any act, omission, fault or negligence whether active or passive of Subcontractor, or anyone acting under its direction, control, or on its behalf or for which it is legally responsible, in connection with or incident to the Subcontractor's Work or arising out of any failure of Subcontractor to perform any of the terms and conditions of this Subcontract . . . .

[Dkt. 52-3, ¶ 9.1].

Use of the language "indemnify" and "save harmless" expressly and unambiguously created an indemnitor-indemnitee relationship between the contracting parties. *See, e.g.*, *N.P.P. Contractors, Inc. v. John Canning & Co.*, 715 A.2d 139, 140 (D.C. 1998) (interpreting an agreement that included the language "shall indemnify and save harmless" as an express indemnification provision); *Grunley Constr. Co., Inc. v. Conway Corp.*, 676 A.2d 477, 478 (D.C. 1996) (same). This express indemnification agreement, if freely entered by AES/UBS, must be given effect and operates under District of Columbia law to bar the WCA's exclusivity provision. *See Rivers & Bryan*, 628 A.2d at 635 (parties are free to enter into indemnification agreements, "even ones providing that an employer who would otherwise be protected by the Workers' Compensation statute will indemnify a third party").

Lest there be any doubt, the Subcontract also contains a provision that directly addresses the interplay between AES/UBS's indemnification obligation and the limitations otherwise imposed by workers' compensation acts. It states:

> In any and all claims against the Indemnified Parties, by any employees of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the Subcontractor's indemnification obligations under this Agreement shall not be diminished or limited in any way by any limitation on the amount or type of costs, damages, compensation or benefits payable by or for the Subcontractor or any of its

> subcontractors under worker's compensation acts, disability benefit acts or other employee benefit acts.

[Dkt. 52-3, ¶ 9.2].

AES/UBS counter that despite the express indemnification provision in the Subcontract, because the language in the Subcontract requires some kind of fault or negligence on AES/UBS's part, and because an "employer cannot be liable to its employee under a negligence or fault theory," Walsh's contractual indemnification claims are barred by the WCA's exclusivity provision. [Dkt. 52-1 at 11]. AES/UBS have it backwards. Under District of Columbia law it is the express indemnification language in the Subcontract—including the provision encompassing negligent acts of AES/UBS—that operates to trump the WCA's exclusivity provision.[6] Certainly, at this early stage of the proceedings, Walsh has stated a plausible express indemnification claim. Accordingly, AES/UBS's motion to dismiss Counts VII and X is denied.

B. **Equitable Indemnification**

AES/UBS also seek to dismiss Counts VIII and XI, Walsh's equitable indemnification claims. [Dkt. 37 at 14–17]. Equitable indemnification is appropriate in situations where the third party and employer "stand in a special legal relationship that carries with it the obligation . . . to indemnify the third party." *Myco*, 565 A.2d at 299 (alteration in original) (quoting Arthur Larson, *Third-Party Action Over Against Workers' Compensation Employer*, 1982 Duke L. J. 483, 505-06). It does not offend the WCA's exclusivity provision when the legal relationship on which it is based arises "out of a specific duty of a defined nature" and exists separate from the employer's

---

[6] AES/UBS's reliance on *Myco* in support of their argument to the contrary is misplaced. [Dkt. 52-1 at 11]. The language they quotes from *Myco* relates to the Court of Appeals' discussion of the interplay between the WCA and claims of implied indemnification. *See Myco*, 565 A.2d at 300. In fact, as discussed above, the Court of Appeals in *Myco* cited with approval the "well-settled rule in most jurisdictions" that an employee's *express* contractual agreement to indemnify a third party bars application of the exclusivity provision of a workers' compensation statute. *Id.* at 297.

relationship to its employee. *Myco*, 565 A.2d at 299; *see also Howard Univ. v. Good Food Servs., Inc.*, 608 A.2d 116, 122 (D.C. 1992) (finding that the obligation to indemnify depends on the equities of the case and relationship between the parties).

Here, the issue is whether the presence of Walsh's express indemnification provision with AES/UBS precludes it from additionally asserting a claim for equitable indemnification. Indeed, many states have held that where an express, written indemnification provision exists, the agreed upon terms of that provision—and not principles of implied or equitable indemnification—control the duties and respective liability of the contracting parties. *See, e.g.*, *Commercial Ins. Co. v. Pac.-Peru Constr. Corp.*, 558 F.2d 948, 953 (9th Cir. 1977) (applying Hawaii law and positing that "resort to implied indemnity principles is improper when an express indemnification contract exists"); *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 532 P.2d 97, 100 (Cal. 1975) ("Where … the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity."); *Estes Express Lines, Inc. v. Chopper Express, Inc.*, 641 S.E.2d 476, 479 (Va. 2007) ("[T]he purpose of an indemnity provision is to pre-determine how potential losses incurred during the course of a contractual relationship will be distributed between the potentially liable parties."). In applying this rule, courts have found it appropriate to dismiss equitable indemnification claims in cases where viable contractual indemnification claims existed. *See, e.g.*, *UIRC-GSA Holdings, Inc. v. William Blair & Co., LLC*, 289 F. Supp. 3d 852, 861–63 (N.D. Ill. 2018) (granting the defendant's motion to dismiss, finding that the parties had an express indemnification provision and that the plaintiff failed to sufficiently allege the elements for implied indemnity); *Collier v. Land & Sea Rest. Co., LLC*, 972 F. Supp. 2d 870, 877 (W.D. Va. 2013) (granting the defendant's motion to dismiss, finding that the existent express indemnification provision "must control the

indemnity obligations"); *Nat'l Lab. Coll., Inc. v. Hillier Grp. Architecture N.J., Inc.*, 739 F. Supp. 2d 821, 831 (D. Md. 2010) (granting the defendant's motion to dismiss the plaintiff's common law indemnification claim because an express indemnification agreement existed).

However, several courts in the District of Columbia have allowed a plaintiff to plead an equitable indemnification claim in the alternative. *See Truesdale v. Mountain Productions, Inc.*, 292 F. Supp. 3d 195, 204 (D.D.C. 2017) (finding the third-party plaintiff "plausibly pled" both a contractual indemnification claim and sufficient factual allegations to support an equitable indemnification claim against the third-party defendant); *Parker v. John Moriarty & Assocs.*, 249 F. Supp. 3d 507, 515 (D.D.C. 2017) (granting the third-party defendant's motion for leave to amend its complaint asserting a contractual indemnification claim to add an [implied] indemnification claim); Order at 2, *C&E Servs., Inc. v. Ashland, Inc.*, Civ. Action No. 03-1857 (EGS) (D.D.C. Aug. 6, 2004), ECF No. 12; *see also Developers Sur. & Indem. Co. v. Renaissance Valley Farms, LLC*, 36 F. Supp. 3d 742, 753 (W.D. Ky. 2014) (finding that the plaintiffs could plead their common law indemnification claim in the alternative where their contractual indemnification claim may not have completely encompassed the relief sought); *SRK Consulting, Inc. v. MMLA Psomas, Inc.*, No. CV-09-0611-PHX-GMS, 2009 WL 2450490, at *3 (D. Ariz. Aug. 11, 2009) (finding that "pending a conclusion about the validity of the [express indemnification] contract, recovery under a common law indemnification claim is plausible").

Given the relatively low bar a plaintiff must meet at the pleading stage, *see* Fed. R. Civ. P. 8(a), that the court must "construe the complaint in a light most favorable to the plaintiff," *Wada v. United States Secret Serv.*, 525 F. Supp. 2d 1, 8 (D.D.C. 2007) (citing *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994)), and that the Federal Rules of Civil Procedure allow a party to plead alternative causes of action, *see* Fed. R. Civ. P.

8(d)(2)–(3), the Court finds here that Walsh has "plausibly pled" its equitable indemnification claims. Moreover, AES/UBS do not argue in their motion to dismiss that these claims are insufficiently pleaded. [Dkt. 52-1]. Accordingly, AES/UBS's motion to dismiss Counts VIII and XI will be denied.

### C. Contribution

In Counts IX and XII, Walsh also seeks contribution from AES/UBS, "jointly and severally, as to any and all damages" in the event it is held liable either in whole or in part to Holt. [Dkt. 37 at 15, 17]. However, it is well-settled that a contribution claim, which "sounds primarily in tort," *Eagle-Picher Indus., Inc. v. United States*, 937 F.2d 625, 635 (D.C. 1991), would be barred by the WCA's exclusivity provision, *see, e.g.*, *Lockhart*, 905 F. Supp. at 116–17 (noting that "under the District of Columbia's WCA, employers are immune from tort actions by their employees for personal injuries arising out of and in the course of their employment …"); *see also Myco*, 565 A.2d at 297 n.12 (the third-party plaintiff's concession of its original contribution claim was "justified" since most jurisdictions' workers' compensation statutes bar recovery under a contribution theory). Although nothing in the WCA prevents an employee from filing a tort action against a third party that may be liable for his injury, the third party may not in turn seek recovery from the employer "premised on the theory of contribution from a joint tortfeasor, because, under the exclusivity provision of the WCA, an employer cannot be held liable in tort for the injury to the employee." *Howard Univ.*, 608 A.2d at 123.

Though Walsh contends that AES/UBS waived the WCA's exclusivity provision in the Subcontract [Dkt. 55 at 8], the alleged waiver expressly applies only to "the Subcontractor's indemnification obligations" [Dkt. 52-3, ¶ 9.2]. No provision of the Subcontract provides for contribution or purports to waive the WCA's exclusivity provision with regard to it. [Dkt. 52-3].

12

Again, agreements to limit the scope of the WCA's exclusivity provision, such as the one AES/UBS entered with Walsh, are to be "narrowly construed by the courts 'so as not to read into [them] any obligations the parties never intended to assume.'" *Rivers & Bryan*, 628 A.2d at 635 (alteration in original) (quoting *Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir.1990)). There is no basis in the Subcontract to read any limitation on the WCA's exclusivity provision with respect to contribution.

Walsh further argues, without citing authority, that its contribution claim should be permitted, arguing fairness and equity require that Holt's losses be distributed among all wrongdoers. [Dkt. 55 at 9]. But the need for fairness and equity is satisfied by the WCA's exclusivity provision, which "roughly balance[s] the sacrifices of and benefits to both employer and employee," by ensuring that the employee gets "faster and virtually guaranteed compensation" for job-related injuries and the employer "is relieved of its previously unlimited common law tort liability." *Myco*, 565 A.2d at 296. Walsh's interest in receiving contribution is further weakened because of its express indemnification agreement with AES/UBS, which will be permitted to go forward. Accordingly, AES/UBS's motion to dismiss Counts IX and XII is granted.

## IV. CONCLUSION

For the foregoing reasons Third-Party Defendants' motion to dismiss [Dkt. 52] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motion to dismiss is granted as to Counts IX and XII, and denied as to Counts VII, VIII, X, and XI.

Date: July 10, 2018

G. Michael Harvey
United States Magistrate Judge